STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
LOUIS D. PROUT, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1957—Decided February 25, 1957.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. John F. Crane,* Deputy Attorney-General, argued the cause for appellant (*Mr. Grover C. Richman, Jr.,* Attorney-General, attorney; *Mr. Christian Bollermann,* Deputy Attorney-General, of counsel).

No appearance for respondent.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D.   Complaint was brought against defendant in the municipal court to recover a penalty for violation of the State Fish and Game Code (1955) and also of *N. J. S. A.* 23:4–44, in that he unlawfully had in his possession "while in the woods or fields a missile in which the buckshot was held together or strung." Judgment went in defendant's favor, and on appeal to the County Court the same result was reached after a trial *de novo.* The State appeals.

There can be no dispute about the facts. A fish and game warden and his deputy found defendant hunting deer

during the December 1955 open season in the woods or fields of Medford Township, Burlington County. They examined his shotgun and extracted two shells therefrom, one containing controlled shot, *i. e.,* shot which had been strung or joined together, and the other buckshot. Defendant also had in his possession other shells, some containing controlled shot and the others buckshot. Defendant professed not to know that some of the shells contained controlled shot and stated that if he had known, he would not have used them. At the warden's request he read and signed a hunter's statement in which he admitted hunting deer with controlled buckshot and that he had such a shell in his gun and possession when apprehended.

*N. J. S. A.* 23 :4–44 in part provides:

"Unless otherwise prescribed by the State Fish and Game Code, no person engaged in hunting for wild deer shall use or carry a rifle of any kind or description, or any firearm or shotgun with a smaller caliber than twelve gauge or load such firearm or shotgun with a bullet or other missile larger than that commonly known as buckshot, or have in possession in the woods or fields during the open season for killing deer any missile except buckshot or have any missile larger than number four shot in possession in the woods or fields at any time other than during the open season for killing deer; * * *."

Sections 23 :4–44 and 23 :4–46 of the Fish and Game Code (1955), which defendant is charged with having violated, provides:

"From December 12 to December 17, it shall be illegal to use any rifle or any firearm of any kind of a smaller caliber than 12 gauge, or to have in possession any firearm missile except buckshot, which cannot be strung, cut or joined in any manner, or to hunt between 5 P. M. and 7 A. M., or to hunt with dog."

■ In finding defendant not guilty the County Court held in effect that *N. J. S. A.* 23 :4–44 did not prohibit the possession of controlled shot. The statute, said the court, "provides for the size only and not for the type of the particular size." Under the circumstances, the Fish and Game Code provision exceeded the authority delegated by the Legislature and was void and of no effect.

The County Court was in error. In reorganizing the Executive Branch of the State Government pursuant to the new *Constitution of* 1947, *Art.* V, *sec.* IV, *par.* 1, the 1948 Legislature established the Department of Conservation and Economic Development, one of whose divisions was the Division of Fish and Game, with its Fish and Game Council. *L.* 1948, *c.* 448, §§ 1, 25; *N. J. S. A.* 13:1*B*–1, 23. By section 32 of the 1948 act, *N. J. S. A.* 13:1*B*–30, the Legislature provided:

"For the purpose of providing an adequate and flexible system of protection  *  *  *  and conservation of  *  *  *  game animals, the council [Fish and Game Council] is hereby authorized and empowered 'to determine under what circumstances, when and in what localities, *by what means* and in what amounts and numbers such  *  *  *  game animals  *  *  *  may be pursued, taken, killed, or had in possession so as to maintain an adequate and proper supply thereof, and may  *  *  *  adopt and from time to time amend and repeal such appropriate and reasonable regulations concerning the same,  *  *  *  penalties for the violation of which are prescribed by certain of the sections of Title 23 of the Revised Statutes mentioned herein  *  *  *. The regulations so established shall be called the State Fish and Game Code." (Italics ours.)

Section 34 of the act, *N. J. S. A.* 13:1*B*–32, declares that any regulation or amendment thereto adopted by the Fish and Game Council may, among other things,

"(d) Prescribe the manner and *the means* of pursuing, taking, or killing any species or variety [of game animals]  *  *  *." (Italics ours.)

And section 38, *N. J. S. A.* 13:1*B*–36, states that "It shall be unlawful for any person to violate any of the provisions of the State Fish and Game Code adopted and published in accordance with the provisions of this article."

The Fish and Game Code provisions prohibiting controlled shot, sections 23:4–44 and 46 quoted above, first became effective September 1, 1955, and were in full force and effect at the time of the 1955 deer hunting season. The reasoning of the County Court that the Council was without

authority to adopt the controlled shot regulation because *N. J. S. A.* 23:4–44 was concerned only with size and not with type of shot, is clearly at odds with the plain language of *N. J. S. A.* 13:1B–30 and 32. There is nothing in *N. J. S. A.* 23:4–44 evidencing any intent that its provisions with respect to the size of shot may not be implemented or supplemented by administrative regulations otherwise governing the use of shot. In fact, *N. J. S. A.* 23:4–44 opens with the words "Unless otherwise prescribed by the State Fish and Game Code, * * *."

█ Significantly, the language of that section as it now stands, comes directly from section 59, Article V, "Fish and Game Code," of *L.* 1948, *c.* 448, setting up the Department of Conservation and Economic Development, with its Fish and Game Council. *N. J. S. A.* 13:1B–30, 32 and 36, quoted above, derive from the same article. They are, on obvious principles of statutory construction, to be read *in pari materia*. And if there were any doubt at all about this, we have the express language of *N. J. S. A.* 13:1B–30 and 32 whereby the Fish and Game Council, pursuant to legislative authority, has promulgated the regulations determining by what "means" game animals may be hunted.

True, administrative rules and regulations cannot subvert or enlarge upon the statutory policy or any rules and regulations set forth in the statute. See *Abelson's, Inc., v. New Jersey State Board of Optometrists*, 5 *N. J.* 412, 424 (1950). But we have here an express legislative grant of power, and there is no inconsistency between the Code regulation prohibiting the stringing or joining of buckshot and the statutory prohibition against using a missile of greater size than buckshot. When shot is strung, cut or joined, the effect is to create, from individual pellets, a larger missile which, as it was testified, does not disperse over the target area when fired, but holds together in a close pattern.

The Fish and Game Code regulation is valid. The judgment of the County Court is reversed and the matter remanded for the imposition of a penalty.